IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

KAREEM HASSAN MILHOUSE, :
:
    Petitioner : CIVIL NO. 1:CV-09-01973
:
v. : (Judge Rambo)
:
B.A. BLEDSOE, :
:
    Respondent :

# **M E M O R A N D U M**

Before the court is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241, filed by petitioner Kareem Hassan Milhouse ("Milhouse"), an inmate currently incarcerated at the United States Penitentiary in Lewisburg, Pennsylvania ("USP-Lewisburg"). (Doc. 1.) Milhouse alleges that his constitutional rights were violated in the context of a disciplinary hearing. For the reasons that follow, the petition will be denied.

## I. **Background**

On July 10, 2008, at approximately 11:00 a.m., Correctional Counselor Keith Metzger approached Cell A03-307, which was occupied by Milhouse. (Doc. 6-2 at 26-28, Decl. B. Chambers, Ex. 1, Attach. C, Incident Report.) Counselor Metzger informed Milhouse that it was time to move to a new cell on the second floor of the housing unit. (Doc. 6-2 at 26.) Milhouse replied that he

was not moving to the second floor. (*Id.*) When Counselor Metzger again informed Milhouse that he was being assigned to a new cell, Milhouse again refused the move. (*Id.*) Prison records indicate that on that same day Milhouse was transferred to USP-Lewisburg's Special Housing Unit at 12:46 p.m. pending an investigation of the incident. (Doc. 6-2 at 30, Decl. B. Chambers, Ex. 1, Attach. D, Inmate History.)

On July 10, 2008, at approximately 1:45 p.m., Counselor Metzger completed Incident Report Number 1752868, charging Milhouse with a Code 306 violation, Refusing to Accept a Program Assignment, and a Code 307 violation, Refusing to Obey an Order. (Doc. 6-2 at 26.) As part of the investigation, Milhouse was advised of his rights and indicated that he understood them. (*Id.* at 28.) In addition, he was interviewed by an investigating officer from the Bureau of Prisons ("BOP") staff. (*Id.*) Milhouse had no comment and requested no witnesses. (*Id.*) The investigation was completed at 5:50 p.m., and based on the information gathered, the investigating officer decided to refer the incident to the Unit Disciplinary Committee ("UDC") for further action. (*Id.* at 27.) At approximately 6:00 p.m., a copy of the completed incident report was delivered to Milhouse, charging him with the Code 306 and 307 violations. (*Id.* at 26.)

On July 13, 2008, at 10:06 a.m., the UDC held a hearing to review the incident report. (*Id*. at 27.) At that time, Milhouse declined to make a statement. (*Id*.) After reviewing the matter, the UDC referred it to the disciplinary hearing officer ("DHO") for a further hearing. (*Id*.) In addition, on July 13, 2008, Milhouse signed an advisement of rights form, indicating that he understood his rights at the proceeding before the DHO. (Doc. 6-2 at 34-35, Decl. B. Chambers, Ex. 1, Attach. E, Inmate Rights at Discipline Hearing.) That same day, Milhouse declined staff representation and waived his right to call witnesses. (Doc. 6-2 at 37, Decl. B. Chambers, Ex. 1, Attach. F, Notice of Disciplinary Hearing Before the DHO.)

A hearing was held before the DHO on July 29, 2008. (Doc. 6-2 at 39-43, Decl. B. Chambers, Ex. 1, Attach. G, DHO Report.) At the beginning of the hearing, Milhouse was reminded of his rights before the DHO. (*Id*. at 39.) Milhouse acknowledged his rights and indicated that he was ready to proceed with the hearing. (*Id*.)

At the DHO hearing, Milhouse was provided with the opportunity to make a statement. (*Id*.) Milhouse alleged that a procedural violation of his due process rights had occurred during the processing of the incident report. (*Id*.) Specifically, Milhouse testified that he did not receive a copy of the incident

3

report within 24 hours of the writing of the report, as is ordinarily required by BOP policy relating to inmate discipline. (*Id*.)  The DHO informed Milhouse that sections 14, 15, and 16 of the incident report show that Milhouse received a copy of the incident report from the investigating officer on July 10, 2008 at 6:00 p.m. (*Id*.)  The DHO also informed Milhouse that the investigating officer documented in sections 24 and 25 of the incident report that Milhouse had appeared before the investigating officer and had been advised of his rights and indicated he understood them. (*Id*.)  Sections 24 and 25 of the incident report also indicated that Milhouse had displayed a fair attitude during his interview with the investigating officer, made no statement with regard to the incident report at that time, and requested no witnesses. (*Id*.)  Milhouse countered that he had never been interviewed by the investigating officer and that the investigating officer fabricated those portions of the incident report. (*Id*. at 39-40.)  When the DHO again advised Milhouse that the record documented that the incident report had in fact been processed in accordance with BOP policy, Milhouse reiterated that the investigating officer had lied and he never received a copy of the incident report. (*Id*. at 40.)

The DHO asked Milhouse whether he received a copy of the incident report following the hearing before the UDC. (*Id*.)  In response, Milhouse testified that

4

he had received a copy of the incident report a day or two after the UDC hearing. (*Id.*) The DHO then informed Milhouse that, by his own admission, he had received a written copy of the charges against him well in advance of the 24 hours prior to the DHO hearing. (*Id.*)

Following this exchange, the DHO asked Milhouse if he was prepared to defend himself against the charges. (*Id.*) Milhouse responded that he was prepared to defend himself but requested that the incident report be expunged because he had not received it within 24 hours of the incident. (*Id.*) The DHO informed Milhouse that the record indicated that he did in fact receive a copy of the incident report within 24 hours of the incident. (*Id.*) Thus, the DHO refused Milhouse's request for expungement of the incident report and directed that the hearing proceed as scheduled. (*Id.*)

The DHO summarized Milhouse's resulting testimony as follows:

Inmate Milhouse testified that Section 11 of the incident report is not completely accurate. Inmate Milhouse testified that Counselor Metzger did come to his cell and tell him to pack his property because he was moving to the second floor. Inmate Milhouse stated he complied with Counselor Metzger's directions and packed his personal property in preparation for the move. Milhouse testified that when Counselor Metzger returned to move him, he asked Counselor Metzger which cell he was moving to and who his cell mate was going to be. Milhouse testified that when Counselor Metzger informed him of who his new cell mate was going to be, he told Counselor Metzger that he was not moving into a cell with that

5

particular inmate. Milhouse testified that he and that particular inmate "don't get along." Milhouse testified that he knew there would be issues between the two inmates, so there was no point in moving into the cell. Milhouse testifed that he informed Counselor Metzger that he was not refusing to move to the second floor, he was just refusing to move into a cell with that particular inmate. Milhouse testified that he told Counselor Metzger that he would have moved in with a different cell mate, just not that particular inmate. Milhouse reiterated that his personal property was packed and ready to go, which is evidence that he was prepared to move. Milhouse testified that he didn't refuse to move, he just refused to accept that particular inmate as a cell mate.

> The DHO asked Milhouse what type of "issues" he had with the other inmate, and whether they were of a nature which would result in a fight or physical altercation between the two inmates. Milhouse testified that the issues he had with the other inmate were not of such a nature that a fight or physical altercation would have occurred if the two inmates became cell mates. Milhouse testified that he knew the other inmate, and just knew things wouldn't work out between the two of them if they became cell mates. The DHO asked Milhouse whether he felt threatened by this other inmate. Milhouse replied that he did not feel threatened by the other inmate.

(*Id*.)

Further, Milhouse was provided the opportunity to present witnesses and to provide supporting documentary evidence. (*Id*. at 39-41.) However, Milhouse failed to call any witnesses or provide documentary evidence. (*Id*.)

After the hearing, the DHO issued a decision, dated August 12, 2008, finding Milhouse guilty of committing the Code 306 violation, Refusing a Program Assignment (cell assignment). (*Id*. at 41.) In making this determination,

the DHO relied upon the written eyewitness account of the reporting officer and the testimony of Milhouse, in which he admitted that he did refuse to move to the specific cell with a particular inmate, admitted that the issues he had with that inmate would not result in a fight, and admitted that he did not feel threatened.[1] (*Id*.) The DHO noted that the rationale provided by Milhouse did not justify his refusal to move to a new cell. (*Id*. at 42.) The DHO concluded that the "greater weight of the evidence" supported the finding that Milhouse had refused to move to a different cell as directed by the BOP staff in violation of Code 306. (*Id*. at 41-42.) Milhouse was sanctioned with disallowance of fourteen (14) days of good conduct time, fifteen (15) days of disciplinary segregation (suspended pending 180 days clear conduct), and loss of commissary privileges for ninety (90) days. (*Id*. at 42.)

Milhouse filed the instant petition alleging that he did not receive the incident report within 24 hours of BOP staff becoming aware of the incident, that

---

[1] The DHO found Milhouse's testimony immaterial to establishing whether he committed the prohibited act for a number of reasons, namely that inmates cannot be permitted to dictate to staff who they will accept as cell mates because doing so would seriously disrupt the secure and orderly operation of the institutions, and that USP-Lewisburg was in the midst of a protracted institutional lock down as a result of a series of disruptive events transpiring over several days. (Doc. 6-2 at 42.) Further, at the time Milhouse was directed to move, BOP staff were attempting to consolidate cell space in general population housing units in order to release some inmates from the Special Housing Units to make more space available in the case of other disruptive events. (*Id*.)

the investigating officer falsified documents with respect to delivering the incident report, and that he was prohibited from calling witnesses.

## II. Discussion

The BOP disciplinary process is fully outlined in Code of Federal Regulations, Title 28, Sections 541.10 through 541.23. These regulations dictate the manner in which disciplinary action may be taken should a prisoner violate, or attempt to violate, institutional rules. The first step requires filing an incident report and conducting an investigation pursuant to 28 C.F.R. § 541.14. Staff is required to conduct the investigation promptly absent intervening circumstances beyond the control of the investigator. 28 C.F.R. § 541.14(b).

Following the investigation, the matter is then referred to the UDC for a hearing pursuant to 28 C.F.R. § 541.15. If the UDC finds that a prisoner has committed a prohibited act, it may impose minor sanctions. If the alleged violation is serious and warrants consideration for more than minor sanctions, or involves a prohibited act listed in the greatest or high category offenses, the UDC refers the matter to a DHO for a hearing. 28 C.F.R. § 541.15. In this case, the UDC determined that due to the serious nature of the charges, it would refer the case to the DHO for a disciplinary hearing. (Doc. 6-2 at 27.)

Moderate category offenses carry a possible sanction of loss of good conduct time credits, *inter alia*. 28 C.F.R. § 541.13. When a prison disciplinary hearing may result in the loss of good conduct time credits, due process requires that the prisoner receive (1) written notice of the claimed violation at least twenty-four (24) hours in advance of the hearing, (2) an opportunity to call witnesses and present documentary evidence in his or her defense when doing so would not be unduly hazardous to institutional safety or correctional goals, and (3) a written statement by the factfinder as to evidence relied on and reasons for the disciplinary action. *See Wolff v. McDonnell*, 418 U.S. 539, 564-66 (1974).

### A. Incident Report

Milhouse claims he was denied due process because the incident report was not delivered to him within 24 hours of the time BOP staff became aware of the incident, and therefore he was unable to defend himself at the disciplinary hearing. Under BOP procedures for disciplinary proceedings, staff shall give the inmate charged with violating a BOP rule a written copy of the charges against him, "ordinarily within 24 hours of the time staff become aware of the inmate's involvement in the incident." 28 C.F.R. § 541.15(a). "The use of the word 'ordinarily' clearly provides the BOP with discretion." *Scott v. Martinez*, Civ. No. 1:CV-08-0531, 2009 WL 790143, at *3 (M.D. Pa. March 20, 2009). Further,

under BOP regulations, when an incident report is referred to the DHO, a disciplinary hearing is conducted pursuant to the procedures set forth in 28 C.F.R. § 541.17. Among these regulations, the Warden is required to provide the inmate with advance written notice of the charges no less than 24 hours before the DHO hearing. 28 C.F.R. § 541.17(a). However, absent a showing of prejudice, a technical violation of BOP regulations does not automatically require that a disciplinary sanction must be vacated and remanded. *Von Kahl v. Brennan*, 855 F. Supp. 1413, 1421 (M.D. Pa. 1994) (holding in a federal inmate disciplinary proceeding "where the minimal requirements of due process have been met, an inmate must show prejudice to the rights sought to be protected by the regulation claimed to be violated" in order to obtain habeas relief).

In the instant case, Milhouse asserts that the incident report was not delivered to him in a timely manner. The record, however, reflects that the incident report was written on July 10, 2008, and delivered to Milhouse at approximately 6:00 p.m. that same day. Further, Milhouse's DHO hearing was held on July 29, 2008, nineteen (19) days after receipt of the incident report, thus affording him ample time to prepare for the hearing. At the DHO hearing, the DHO asked Milhouse whether he had received a copy of the incident report

following his hearing before the UDC. The DHO summarized this exchange as follows:

> Inmate Milhouse testified that he did receive a copy of the incident report a day or two after the UDC hearing. The DHO informed Milhouse that he had received a written copy of the charges against him, by his own admission, from the UDC. This written copy of the charges was received by Milhouse well in advance of 24 hours prior to appearing before the DHO. The DHO asked Milhouse whether he was prepared to defend himself against the charge. Milhouse stated that he was prepared to defend himself against the charge, however, again raised the allegation that he did not receive a copy of the incident report within 24 hours of the report being completed by the reporting officer. Milhouse asked that the incident report be expunged based on this alleged procedural error. The DHO informed Milhouse that the record reflects that he did receive a copy of the incident report from the investigating officer, and was in fact interviewed by the investigating officer. Moreover, the DHO noted Milhouse stated that he did receive a copy of the incident report from the UDC well in advance of 24 hours prior to appearing before the DHO, and was prepared to defend himself against the charge. The DHO informed Milhouse, therefore, that the incident report would not be expunged, and the hearing would proceed as scheduled.

(Doc. 6-2 at 40.) Upon review of the record, including this statement in the DHO's report, the court finds that the evidence demonstrates that Milhouse received notice of the charge against him at least 24 hours before the DHO hearing as required by *Wolff*. *See also* 28 C.F.R. § 541.17(a). Moreover, the evidence, as well as Milhouse's above-referenced admission to the DHO regarding the delivery of the incident report, refute Milhouse's instant claim that the investigating officer

11

falsified documents with respect to delivery of the incident report.² Thus, the petition will be denied as to Milhouse's claim that he did not receive the incident report in a timely manner.

**B.** **<u>Witnesses</u>**

Milhouse argues that he was not afforded the opportunity to call witnesses in his defense. A prisoner has the limited right to call witnesses who have relevant information and would not present a threat to penological interests. *Wolff*, 418 U.S. at 566-67; 28 C.F.R. § 5471.17(c). *See also Moles v. Holt*, 221 Fed. Appx. 92, 95 (3d Cir. 2007) ("A prisoner facing charges that may result in a loss of good-time credits has a due process right to call witnesses at a disciplinary hearing when permitting him to do so will not be unduly hazardous to institutional safety or correctional goals") (quotations omitted). Inmates do not have an absolute, constitutionally-protected right to confront and cross-examine witnesses at their prison disciplinary hearings. *Wolff*, 418 U.S. at 567-68. *See also Baxter v.*

---

² In connection with this claim, Milhouse asserts that he requested camera surveillance to substantiate his claim that the investigating officer failed to interview him and provide him with the incident report. At the DHO hearing, an inmate is entitled to make a statement, to present documentary evidence, to submit names of requested witnesses and to have them called to testify and present documents provided the calling of witnesses or the disclosure of documentary evidence does not jeopardize or threaten institutional or an individual's security. 28 C.F.R. § 541.17(c). Here, no request for camera surveillance from Milhouse appears in any of the records from the disciplinary proceedings.

12

*Palmigiano*, 425 U.S. 308, 321-22 (1976); *Young v. Kann*, 926 F.2d 1396, 1404 (3d Cir. 1991).

The applicable regulation provides that

[t]he DHO shall call those witnesses who have information directly relevant to the charge(s) and who are reasonably available . . . . The DHO need not call repetitive witnesses. The reporting officer and other adverse witnesses need not be called if their knowledge of the incident is adequately summarized in the Incident Report and other investigative materials supplied to the DHO . . . . The DHO shall document reasons for declining to call requested witnesses in the DHO report . . . .

28 C.F.R. § 541.17(c). *See also Moles*, 221 Fed. Appx. at 95 ("it is not a denial of due process to deny an inmate an opportunity to present witnesses whose testimony would be irrelevant, repetitive, or unnecessary") (quotations omitted).

In his petition, Milhouse contends that he requested witnesses who saw and heard his conversation with Counselor Metzger. (Doc. 1 at 5.) Further, in his reply, Milhouse claims that at his hearing before the UDC he requested witnesses, but rather than identify these witnesses by name or BOP identification number, he was able only to provide cell numbers. (Doc. 7 at 4.) However, as pointed out by Respondent, the record does not indicate any such request made at any time during the disciplinary process. In fact, the record reflects that Milhouse waived his right to call witnesses when he acknowledged the Notice of Disciplinary Hearing before

13

the DHO. (Doc. 6-2 at 37.) Further, at the beginning of the DHO hearing, the DHO noted that Milhouse again acknowledged his rights and indicated he was ready to proceed with the hearing, despite not having witnesses present at the time. (Doc. 6-2 at 39) (Milhouse "informed the investigating officer that he was requesting no witnesses"). Because the record indicates that Milhouse did not request witnesses at any time during the disciplinary process and Milhouse concedes now that he was unable to identify any specific witness, the court finds no due process violation with respect to witnesses. Thus, the petition will be denied as to Milhouse's instant claim that he was not afforded the opportunity to call witnesses.

### III. Conclusion

For the above stated reasons, the petition for writ of habeas corpus will be denied.

An appropriate order will issue.

                                                s/Sylvia H. Rambo
                                              United States District Judge

Dated: January 7, 2010.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

**KAREEM HASSAN MILHOUSE,** :
:
    Petitioner : CIVIL NO. 1:CV-09-01973
:
v. : (Judge Rambo)
:
**B.A. BLEDSOE,** :
:
    Respondent :

## **O R D E R**

**AND NOW**, this 7th day of January, 2010, upon consideration of the petition for writ of habeas corpus (Doc. 1), and for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT**:

1) The petition for writ of habeas corpus (Doc. 1) is **DENIED**.

2) The Clerk of Court is directed to **CLOSE** this case.

                                      s/Sylvia H. Rambo
                                      United States District Judge